UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                              )
GILBERT GRAHAM,               )
                              )
    Plaintiff,                )
                              )
        v.                    )    Civil Action No. 03-1951 (RWR)
                              )
ALBERTO GONZALES et al.       )
                              )
    Defendants.               )
_____)
```

### MEMORANDUM OPINION AND ORDER

Pro se plaintiff Gilbert Graham, a 54-year-old African-American retired Special Agent for the Federal Bureau of Investigation ("FBI"), filed an amended complaint against the Attorney General[1] and other federal officers and agencies, alleging that his former federal employer unlawfully discriminated against him based on his race and age, retaliated against him for filing complaints of discrimination by creating a hostile work environment through continuing violations, violated his Fifth Amendment equal protection and due process rights, and constructively discharged him. Defendants moved to dismiss plaintiff's claims[2] because they are either barred by res

---

[1] Attorney General Alberto Gonzales is substituted as a defendant in place of former Attorney General John Ashcroft. See Fed. R. Civ. P. 25(d).

[2] Defendants' motion was filed before plaintiff amended his complaint by adding two constructive discharge claims as Counts Six and Seven. Defendants' Opposition to Plaintiff's Motion for

-2-

judicata, barred by plaintiff's failure to exhaust mandatory administrative remedies, or fail to state a claim.  Defendants seek in the alternative judgment as a matter of law.  Because Counts One, Two, Four and Five rely on the same nucleus of facts as did claims already raised and litigated in a prior action, those counts will be dismissed as precluded under the doctrine of res judicata.  Because plaintiff did not exhaust his administrative remedies with respect to the two claims of constructive discharge, Counts Six and Seven will be dismissed. Because plaintiff has sufficiently stated a new and separate claim for hostile work environment in retaliation for his participation in protected activities that does not arise from the same nucleus of facts that supported the claims in the prior litigation, defendants' motion as to Count Three will be denied.

<u>BACKGROUND</u>

Plaintiff worked as a Special Agent for the FBI for 25 years in the Washington Field Office.  He asserts that during his career in that office, he "was unjustly singled out for investigation, interrogation, unlawfully sanctioned, subjected to a hostile work environment and constructively discharged solely because he is an African American, his participation in protected

---

Leave to File Amended Complaint is being treated as a motion to dismiss Counts Six and Seven, in accord with the Minute Order of August 15, 2005.

-3-

activities and his age." (First Am. Compl. ("Am. Compl.") ¶ 1.)
Graham filed an EEO complaint against his employer in 1985, and
then a civil action in 1992, alleging disparate treatment and
disparate impact racial discrimination and retaliation. (Id.
¶ 92.) He also actively participated in a class action against
his employer filed in 1993. (Id.) In 1999, Graham was the
subject of an investigation by the Intelligence Oversight Board
("IOB"), an action that plaintiff alleges was racially
discriminatory as well as procedurally defective. (Id. ¶¶ 28-39,
67.) Graham filed an EEO complaint about the IOB episode in
November 2000. (Id. ¶ 10; Def.'s Mem. in Supp. of Mot. to
Dismiss, or in the Alt., for Summ. J. ("Def.'s Mem.") at 3.) The
IOB investigation resulted in a determination to suspend Graham
for three days without pay. Graham appealed the punishment by
letter dated April 2, 2002 (Am. Compl. ¶ 67; Def.'s Mem. Ex. 6.),
and filed a second EEO complaint alleging race and age
discrimination. (Am. Compl. ¶ 12; Def.'s Mem., Ex. 7.) The
discipline was reduced to an official letter of censure by letter
dated May 22, 2002. (Am. Compl. ¶ 69; Def.'s Mem. at 3 n.3 &
Ex. 6.) Soon thereafter, Graham complained to the Justice
Department's Office of Inspector General about what he viewed as
mismanagement and abuse of authority reflected in his workload
assignment and the conduct of the IOB investigation. In
addition, he reported unauthorized use of electronic surveillance

-4-

relating to a public corruption investigation.  (Am. Compl.
¶ 72.)

In June 2002, Graham filed a civil action in this court,
alleging that the agency's handling of the IOB investigation and
determination violated the Administrative Procedures Act ("APA"),
5 U.S.C. § 706 (2000) and his Fifth Amendment equal protection
and due process rights.  See Graham v. Ashcroft, No. Civ. A. 02-
1231 (ESH) (D.D.C. June 21, 2002) ("Graham I") (Complaint).
After filing the Graham I complaint, Graham requested
administrative leave in September 2002 to address matters related
to his April 2002 EEO complaint, a request defendants used to
scrutinize Graham's time and attendance history, but did not
grant.  (Am. Compl. ¶ 71(a).)  On November 13, 2002, Graham filed
another EEO complaint, adding mental harassment to his list of
grievances, and identifying November 8, 2002 as the date of the
most recent act in support of that claim.  (Def.'s Mem. at 3 &
Ex. 8.)  Two weeks later, the court dismissed Graham I with
prejudice, finding that neither his APA nor his Fifth Amendment
claims were viable.  See Graham I, 2002 WL 32511002 (D.D.C.
Nov. 20, 2002).[3]

_____

[3] The court dismissed plaintiff's APA claims for lack of
jurisdiction, finding that the Civil Service Reform Act ("CSRA"),
5 U.S.C. § 7511, foreclosed any judicial review under the APA of
the agency's handling of the IOB investigation and resulting
employment action.  See Graham I, 2002 WL 32511002, *2-3 (D.D.C.
Nov. 20, 2002).  Further determining that the CSRA did not

-5-

In January 2003, Graham was transferred to another squad and assigned a bureau vehicle "with an inoperable door locking mechanism, an inoperable heating and air conditioning system, a dead battery, very high mileage and delinquent parking tickets," a transfer and assignment plaintiff alleges to be retaliatory. (Am. Compl. ¶ 71(b).)  Plaintiff asserts that in 2003, the FBI threatened to prosecute him for the unauthorized disclosure of classified information (id. at ¶ 71(c)).  In response, plaintiff alleged that the threats were made to impede an official proceeding and requested that the Justice Department's Office of Professional Responsibility ("OPR") investigate.  (Id. at ¶ 74.) Plaintiff met with OPR staff in July 2003 to review his allegations and other complaints - - a meeting which, according to plaintiff, "quickly turned into a hostile interrogation and threats of administrative action [that could be] taken against the plaintiff."  (Id. at ¶ 76.)  Plaintiff retired from the FBI

---

preclude consideration of Graham's request for equitable relief on the alleged constitutional violations, the court concluded that Graham had not suffered a loss of either a property or liberty interest, and dismissed his constitutional due process claim for that reason.  Id. at *4-5.  In addition, the court found that Graham's constitutional equal protection claim was foreclosed by the remedies afforded under Title VII, 42 U.S.C. § 2000e.  Id. at *5-6.  Plaintiff appealed and the court of appeals affirmed the decision in all respects.  Graham v. Ashcroft, No. 03-5025, 2003 WL 21939757 (D.C. Cir. Aug. 5, 2003); Graham v. Ashcroft, 358 F.3d 931 (D.C. Cir. 2004).

-6-

on September 3, 2003 and filed the complaint in this action on September 22, 2003.

Count One alleges that defendants discriminated against him based on his race in violation of Title VII by assigning him a larger caseload than white agents received, targeting him for the IOB investigation and then unduly punishing him, and subjecting him to an unwarranted investigation by the FBI's OPR.  (Am. Compl. ¶ 81.)  Count Two alleges that defendants assigned him a larger caseload than younger agents received, investigated him for purported IOB violations influencing his decision to retire, and notified him that defendants intended to conduct an OPR investigation six days before his fiftieth birthday, all in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a.  (Am. Compl. ¶ 88.)  Count Three, expressly alleged as a continuing violation, charged defendants with retaliating against him for his participation in protected activities by creating a hostile work environment when they subjected him to undue scrutiny in response to his request for administrative leave yet never acted on the leave request, assigned him a defective bureau car and threatened him with sanctions for using unclassified information in other litigation. (Am. Compl. ¶¶ 2, 71(a), 92-93.)  Count Four claims that defendants violated plaintiff's Fifth Amendment equal protection rights in their IOB and OPR investigations by targeting black

-7-

employees, failing to give him the right to explain his position while giving white agents the opportunity to explain theirs, unduly harshly punishing him, and threatening to prosecute him for exercising his rights.  (Am. Compl. ¶¶ 98-99.)  Count Five alleges that in barring plaintiff from explaining his position during the IOB investigation, and failing to follow their internal FBI regulations, defendants violated plaintiff's Fifth Amendment liberty interests and procedural due process rights. (Am. Compl. ¶¶ 106-07.)  Count Six alleges that plaintiff was compelled by the hostile environment to take early retirement, five years before plaintiff's mandatory retirement date in 2007. (Am. Compl. ¶¶ 112-114.)  Count Seven alleges that defendants' prior acts of retaliation compelled plaintiff to take early retirement to avoid further retaliation for his involvement in protected activities and whistle-blowing.  (Am. Compl. ¶¶ 116-118.)

Defendants have moved to dismiss all claims, arguing that some of plaintiff's claims are precluded by the doctrine of res judicata because of the disposition in Graham I, that some are barred by plaintiff's failure to exhaust his mandatory administrative remedies, and that any remaining claims fail to state a claim upon which relief may be granted or entitle defendants to judgment as a matter of law.

-8-

DISCUSSION

I.   RES JUDICATA:   COUNTS ONE, TWO, FOUR AND FIVE

The doctrine of res judicata is designed to prevent both repetitive and piecemeal litigation and subsumes both the doctrine of issue preclusion and the doctrine of claim preclusion.  Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984).  The goal of both forms of preclusive effect are the same:  to promote the finality of judicial determinations, to foster reliance on judicial decisions by minimizing the possibility of inconsistent decisions, to conserve judicial resources, and to spare adversaries the vexation and expense of redundant litigation.  See Montana v. United States, 440 U.S. 147, 153 (1979).  Both forms of preclusion apply to this case.

A.   Issue Preclusion

"Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided."  Migra, 465 U.S. at 77 n.1 (citation omitted).  "[O]nce an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits [even if it is] based on a different cause of action involving a party to the prior litigation."  Montana, 440 U.S. at 153.  There are three elements required to establish a preclusive effect of a prior determination of an issue:

-9-

> First, the same issue now being raised must have been
> contested by the parties and submitted for judicial
> determination in the prior case.  Second, the issue
> must have been actually and necessarily decided by a
> court of competent jurisdiction in that prior case.
> . . .  Third, preclusion in the second case must not
> work a basic unfairness to the party bound by the first
> determination.

Yamaha Corp. of America v. United States, 961 F.2d 245, 254 (D.C.
Cir. 1992) (citations and footnote omitted).

Issue preclusion operates in this case to bar consideration
of plaintiff's Fifth Amendment equal protection (Count Four) and
due process (Count Five) claims.  Counts Four and Five in this
action present the same constitutional issues arising from the
same facts that were raised and litigated by the parties to a
final judgment on the merits by a court of competent jurisdiction
in Graham I.  There, the court determined that plaintiff's
treatment and discipline with the IOB episode implicated neither
a liberty nor a property interest of constitutional dimensions,
and plaintiff had not been wrongly deprived of either without due
process.  See Graham I, 2002 WL 32522002, at *4-5.  That decision
disposed of the issue presented in Count Five in this case.
Similarly, the issue of whether plaintiff's Fifth Amendment right
to equal protection had been violated was litigated and resolved
in Graham I.  As to that issue, the court determined that
plaintiff could not be heard on a Fifth Amendment equal
protection claim for an employment grievance against his federal

-10-

employer, because Title VII is the exclusive remedy for such
employment grievances.  <u>Id</u>. at *5-6.  Because the issues were
previously litigated to resolution and plaintiff is precluded
from obtaining a second opinion on the same issues of fact and
law, Counts Four and Five will be dismissed.[4]

B.  <u>Claim Preclusion</u>

Claim preclusion, unlike issue preclusion, aims to prevent
piecemeal litigation and "claim splitting."  "Claim preclusion
refers to the effect of a judgment in foreclosing litigation of a
matter that **never has been litigated**, because . . . it **should**
have been advanced in an earlier suit."  <u>Migra</u>, 465 U.S. at 77
n.1 (citation omitted; emphasis added).  <u>See also</u> 18 Wright,
Miller & Cooper, <u>Fed. Prac. & Proc.</u> §§ 4402, 4416.  Claim

---

[4]  It does not matter that plaintiff now seeks money damages
and injunctive relief where he sought declaratory and injunctive
relief in <u>Graham I</u>.  The general rule that declaratory judgments
are limited in preclusive effect to the matters declared and do
not bar a subsequent action for damages – – a rule that is
dictated by the plain language of the declaratory judgment
statute, 28 U.S.C. § 2202 – – does not apply where relief in
addition to declaratory relief is sought in the earlier
litigation.  <u>See</u> <u>Am. Forest Research Council v. Shea</u>, 172 F.
Supp. 2d 24, 29-30 (D.D.C. 2001) (holding that res judicata
applied where both declaratory <u>and</u> injunctive relief were sought
in prior action).  Plaintiff's reliance on <u>Burgos v. Hopkins</u>, 14
F.3d 787 (2d Cir. 1994) is misplaced.  (Pl.'s Mem. in Supp. of
Mot. in Opp'n to Def.'s Mot. to Dismiss, or in the Alt. for Summ.
J. ("Pl.'s Opp'n") at 23-24.)  In <u>Burgos</u>, res judicata did not
apply because the court did not have the power to award damages
in the prior matter, a petition for habeas relief.  14 F.3d
at 790-91.  Here, the district court was empowered to award
monetary damages and/or injunctive relief in <u>Graham I</u>.

-11-

preclusion bars a claim that **could** have been brought in a prior suit based on the same nucleus of facts, but was not.  Parties "may not relitigate any ground for relief which they already have had an **opportunity** to litigate - - even if they chose not to exploit that opportunity" in the prior suit.  Page v. United States, 729 F.2d 818, 820 (D.C. Cir. 1984) (emphasis added).  An action based on the same nucleus of facts as that of a prior action is said to share the same cause of action, and therefore is barred by res judicata, even if the latter action is predicated on a different legal theory.  See id. ("[I]t is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies.").

     For claim preclusion to apply, there must be "(1) an identity of parties in both suits; (2) a judgment rendered by a court of competent jurisdiction; (3) a final judgment on the merits; and (4) the same cause of action in both suits."  Coleman v. Potomac Electric Power Co., No. 03-1202, 2004 WL 532192, at *2 (D.D.C. Mar. 17, 2004) (quoting Polsby v. Thompson, 201 F. Supp. 2d 45, 48 (D.D.C. 2002)).  Here, there is no dispute that the parties are identical in both actions for res judicata purposes.  There is also no dispute that the judgment was rendered by a court of competent jurisdiction.  The court in Graham I issued a final judgment on the merits of the Fifth

-12-

Amendment claims.  The nucleus of facts regarding the IOB episode gave rise both to the Fifth Amendment claims in Graham I and to the Title VII and ADEA claims in Counts One and Two of this action.  Because Graham I resulted in a final judgment on the merits of claims based on the same cause of action giving rise to Counts One and Two in this action, claim preclusion operates to bar Counts One and Two.

Plaintiff argues that his Title VII and ADEA claims, about which he had filed an EEO complaint in April 2002, were not available to him in June 2002 when he initiated Graham I because he had not yet exhausted his mandatory administrative remedies.  Therefore, he reasons, res judicata should not bar those claims which he now seeks to bring in this action.  (Pl.'s Opp'n at 25-26.)  Plaintiff's premise is incorrect as to his ADEA-based age discrimination claim in Count Two.  Administrative remedies are optional, not mandatory, under the ADEA, so plaintiff could have brought his age discrimination claim in Graham I.  Wrenn v. Derwinski, 791 F. Supp. 11, 13 (D.D.C. 1992) (ADEA plaintiff can forego administrative process to avoid piecemeal litigation) (citing Kennedy v. Whitehurst, 690 F.2d 951, 957 (D.C. Cir. 1982)).  As to the Title VII claims, plaintiff could have, and should have, brought them in his prior action.  He had at least three options in this respect.  Plaintiff could have waited until after October 6, 2002 to file his complaint in order to include

-13-

his Title VII claim in the original complaint.[5]  Alternatively,

he could have filed an action in advance of his right to sue on

the Title VII claims, but moved to stay proceedings until his

right-to-sue date had passed.  Or, he could have requested, after

October 6, 2002, to add his Title VII claim by amendment to the

complaint he filed in June.  See Owens v. Kaiser Foundation

Health Plan, Inc., 244 F.3d 708, 714-15 (9th Cir. 2001) ("[W]e

now join our sister circuits in holding that Title VII claims are

not exempt from the doctrine of res judicata where plaintiffs

have neither sought a stay from the district court for the

purpose of pursuing Title VII administrative remedies nor

attempted to amend their complaint to include their Title VII

claims.") (collecting similar decisions from the First, Second,

Third, Sixth, Seventh and Eleventh Circuits); Davis v. Dallas

Area Rapid Transit, 383 F.3d 309, 315-16 (5th Cir. 2004)

(applying res judicata and noting that plaintiffs could have and

should have requested a stay of the district court proceedings

until their administrative remedies were exhausted); Wilkey v.

Wyoming Dep't of Employment, 314 F.3d 501, 505-06 (10th Cir.

2003) (applying res judicata and noting that plaintiff could have

and should have either sought a stay or amended her complaint).

_____

[5]  Plaintiff filed his EEO complaint on April 9, 2002
(Def.'s Mem. Ex. 7), and thus was entitled to file suit under
Title VII after 180 days had passed, namely, on October 6, 2002.
See 42 U.S.C. § 2000e-5(f)(1).

-14-

In short, Graham could and should have avoided violating the principles res judicata serves.  Res judicata is an unforgiving doctrine that "serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case.  There is simply 'no principle of law or equity which sanctions the rejection by a federal court of the salutory principles of res judicata.'"  <u>Federated Dep't Stores, Inc. v. Moitie</u>, 452 U.S. 394, 401 (1981).  Accordingly, Counts One and Two in this action will be dismissed in their entirety.

II.  EXHAUSTION OF ADMINISTRATIVE REMEDIES:  COUNTS SIX AND SEVEN

Plaintiff's amended complaint includes two counts of constructive discharge: discriminatory constructive discharge (Count Six) and retaliatory constructive discharge (Count Seven). (Am. Compl. ¶ 111-18.)  Constructive discharge claims are cognizable under Title VII when an employee's decision to resign is an objectively appropriate response to intolerable working conditions.  <u>See</u> <u>Pennsylvania State Police v. Suders</u>, 124 S. Ct. 2342, 2347, 2351-52 (2004).  However, a federal court may not entertain a constructive discharge claim brought by a federal employee if the plaintiff has failed to exhaust his available administrative remedies.  <u>See</u> <u>Brown v. General Servs. Admin.</u>, 425 U.S. 820 (1976) (federal employee alleging race discrimination by an employer must exhaust administrative remedies before filing a lawsuit).  Defendant alleges – – and plaintiff does not deny – –

-15-

that plaintiff did not pursue, let alone exhaust, his

administrative remedies with respect to a constructive discharge

claim.  Graham, however, argues that the exhaustion requirement

should not apply to his constructive discharge claims because

those claims are the culmination of, and part of, the continuing

hostile work environment claim as to which he did exhaust his

administrative remedies.  (Pl.'s Reply Mem. in Opp'n to Def.'s

Motion to Dismiss Counts VI and VII of Plaintiff's First Am.

Compl. at 8-9.)  Case law does not support plaintiff's

interpretation.

> The key to determining whether a claim must meet
> the procedural hurdles of the exhaustion requirement
> itself, or whether it can piggy-back on another claim
> that has satisfied those requirements, is whether the
> claim is of a "discrete" act of discrimination or
> retaliation or, instead, of a hostile work environment.
> "Discrete acts such as termination, failure to promote,
> denial of transfer, or refusal to hire" are individual
> acts that "occur" at a fixed time.  . . .  Accordingly,
> plaintiffs alleging such discriminatory action must
> exhaust the administrative process regardless of any
> relationship that may exist between those discrete
> claims and any others.

Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132, 137-38 (D.D.C.

2004) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S.

101, 114 (2002).  Because plaintiff's termination is a discrete

act, he was required, but failed, to exhaust his administrative

remedies as to that act, and he cannot now pursue his

constructive discharge claims in this court.  For this reason,

Counts Six and Seven will be dismissed.

-16-

III. COUNT THREE:  RETALIATORY HOSTILE WORK ENVIRONMENT

Defendants have moved pursuant to Rule 12(b)(6) to dismiss plaintiff's claim for retaliatory hostile work environment.[6]  A motion to dismiss under Rule 12(b)(6) should not be granted unless it is clear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  In ruling on a motion to dismiss, a court accepts as true the facts alleged by the plaintiff and grants the plaintiff every reasonable inference from those facts.  See Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).  A plaintiff, whether pro se or represented, is not required to present a prima facie case in his pleadings or even match facts to every element of a legal theory or allege all that must be eventually proved.  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113, 1114-15 (D.C. Cir. 2000).  While a pro se plaintiff is subject to the requirements set forth in the Federal Rules of Civil Procedure, his pleadings are "subject to less stringent standards than formal pleadings drafted by lawyers."  Gray v. Poole, 275 F.3d 1113, 1115 (D.C. Cir. 2002) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

---

[6]  Defendants also moved pre-discovery, in the alternative, for summary judgment.  Summary judgment is not warranted where discovery may produce evidence capable of supporting plaintiff's claims or creating a genuine issue of fact.  Accordingly, defendants' motion for summary judgment will be denied as premature.

-17-

It is also an abuse of discretion for a court to fail to "consider [a] pro se plaintiff's complaint in light of his [other filings]."  Id. (citing Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999)).

Title VII proscribes retaliation against an employee who engages in protected activity.  42 U.S.C. § 200e-3(a).  In order to maintain a retaliation claim, a plaintiff must show (1) that he engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action against him; and (3) that a causal link connects the protected activity and adverse action.  See Brown v. Brody, 199 F.3d 446, 454 (D.C. Cir. 1999).  An adverse action is one which has "materially adverse consequences affecting the terms, conditions, or privileges of [plaintiff's] employment or . . . future employment opportunities . . .."  Brody, 199 F.3d at 457.  An adverse employment action need not be proved through a single incident.  To the contrary, a hostile work environment can amount to an adverse employment action to satisfy the second element of a retaliation claim.  See Noviello v. City of Boston, 398 F.3d 76, 88-90 (1st Cir. 2005) ("The weight of authority supports the view that, under Title VII, the creation and perpetuation of a hostile work environment can comprise a retaliatory adverse employment action under 42 U.S.C. § 2000e-3(a).") (citing congruent opinions from the Second, Fourth, Seventh, Ninth, Tenth, and Eleventh Circuits).

-18-

To establish the existence of a hostile work environment that is cognizable under Title VII, Graham must show that the harassing incidents were "sufficiently severe or pervasive to alter the conditions of . . . [his employment] and create an abusive working environment." George v. Leavitt, 407 F.3d 405, 416 (D.C. Cir. 2005) (citations omitted); accord Suders, 124 S. Ct. at 2347.  Whether the evidence describes a hostile work environment depends on the frequency, severity, form and nature of the harassment, and whether it "unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).  If the cumulative effect of the harassing incidents "is not severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive," then it does not come within the scope of wrongs for which Title VII provides a remedy.  Id. at 21; Singletary v. District of Columbia, 351 F.3d 519, 526 (D.C. Cir. 2003).

Under these standards, plaintiff has pled a claim for a retaliatory hostile work environment that meets the pleading requirements of Federal Rule of Civil Procedure 8.  Plaintiff's allegations need not be, and do not pretend to be, exhaustive. To the contrary, plaintiff expressly states that the factual allegations stated in Count Three of the complaint are "among others" (Am. Compl. ¶ 93 ("inter alia")), and elsewhere mentions

-19-

other possible retaliatory acts.  (See, e.g., Am. Compl. ¶ 113(c)
("making false accusation that plaintiff fabricated an interview
of Iran-Contra Special Prosecutor, Judge Lawrence E. Walsh");
Pl.'s Opp'n at 13 (delay of badge and credential presentation
ceremony).)

Plaintiff has pled that continuing violations created a
hostile work environment.  "A hostile work environment is
composed of a series of separate acts that collectively
constitute one unlawful employment practice."  National R.R.
Passenger Corp. v. Morgan, 536 U.S. at 117.  Where, as here, a
plaintiff has alleged "'an act contributing to the claim [that]
occurs within the filing period, the entire time period of the
hostile environment may be considered by a court for the purposes
of determining liability.'"  Singletary, 351 F.3d at 526-27
(quoting Morgan, 536 U.S. at 117).  Provided a plaintiff can
establish that the acts are a part of the same actionable
unlawful employment practice of hostile environment, acts that
fall outside the limitations period may be considered as
contributing incidents to the hostile environment claim.  See id.
at 527-28 (citing and quoting Morgan, 536 U.S. at 117, 120-21).
Furthermore, the act that falls within the filing period does not
have to be the last act in the series that establishes a hostile
work environment.  Morgan, 536 U.S. at 117 ("Subsequent events
. . . may still be a part of the one hostile work environment

-20-

claim . . . .").  Thus, although Graham's constructive discharge
claims cannot stand alone to support a Title VII race or
retaliation claim because he did not exhaust his mandatory
administrative remedies, the facts that plaintiff would have used
to support his constructive discharge claims may be considered as
incidents supporting the retaliatory hostile work environment
claim.  Acts prior to, contemporaneous with, and subsequent to
the IOB episode may be considered in determining whether the
cumulative effect of the acts constitutes a hostile work
environment created to harass plaintiff in retaliation for his
participation in protected activities, as plaintiff alleges.
Further, assuming that all the facts marshaled to support the
retaliatory hostile work environment claim are sufficiently
distinct from the nucleus of facts concerning the IOB incident to
avoid res judicata problems, there is no bar to considering even
the IOB incident itself as one of the series of separate acts
that collectively constitute the hostile environment that
violates Title VII.  Because the complaint alleges facts
sufficient to support a claim of a hostile work environment in
retaliation for engaging in protected activities, defendants'
motion to dismiss will be denied as to Count Three.

<u>CONCLUSION AND ORDER</u>

Plaintiff seeks to re-litigate issues in Counts Four and
Five that already have been litigated and decided.  Res judicata

bars these claims from being re-litigated.  Plaintiff also seeks
to litigate claims in Counts One and Two that could and should
have been raised and litigated along with the prior civil action.
These claims, too, are barred by res judicata.  Counts Six and
Seven will be dismissed because plaintiff did not exhaust his
mandatory administrative remedies.  Because plaintiff has
sufficiently stated a claim for retaliatory hostile work
environment, defendants' motion to dismiss Count Three for
failure to state a claim will be denied.  Accordingly, it is
hereby

ORDERED that defendants' motion to dismiss [Dkt. 5, 14] be,
and hereby is, GRANTED in part and DENIED in part.  Defendants'
motion to dismiss is GRANTED as to Counts One, Two, Four, Five,
Six and Seven, and is DENIED as to Count Three.  It is further

ORDERED that plaintiff's motion to conduct limited discovery
on jurisdictional issues [Dkt. 13] be, and hereby is, DENIED AS
MOOT.  It is further

ORDERED that plaintiff's motion for expedited proceedings
[Dkt. 22] be, and hereby is, GRANTED with the disposition in this
Order of the pending motions.  It is further

ORDERED that plaintiff's motion for a Rule 16 conference
[Dkt. 17] be, and hereby is, GRANTED.  Defendants are directed to
respond to the amended complaint, after which a separate order
setting an initial scheduling conference will issue.

-22-

SIGNED this 30th day of September, 2005.


                          _____/s/_____
                          RICHARD W. ROBERTS
                          United States District Judge