UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                              )
GILBERT M. GRAHAM,            )
                              )
          Plaintiff,          )
                              )
          v.                  )  Civil Action No. 03-1951 (RWR/DAR)
                              )
ERIC H. HOLDER, JR., et al.,  )
                              )
          Defendants.         )
_____)
```

MEMORANDUM OPINION

Pro se Plaintiff Gilbert Graham, a 58-year-old African-American retired Special Agent for the Federal Bureau of Investigation ("FBI"), filed this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., against the Attorney General and other federal officers and agencies, alleging that his former federal employer subjected him to a hostile work environment in retaliation for his participation in protected activities.  Defendants move for summary judgment. Because Graham neither establishes that the defendants subjected him to a retaliatory hostile work environment nor rebuts as pretextual the defendants' neutral reasons for their challenged actions, the defendants' motion for summary judgment will be granted and Graham's cross-motion for summary judgment will be denied at moot.

-2-

BACKGROUND

Graham worked as a Special Agent for the FBI in its Washington Field Office ("WFO") for 25 years.  Graham alleges that the defendants subjected him to a hostile work environment because of his participation in protected activities.  (Pl.'s Am. Compl. ("Am. Compl.") ¶ 1.)  Graham filed against the FBI an EEO complaint in 1985 and a civil action under Title VII in 1992, and he actively participated in a class action against the FBI that was filed in 1993.  (Id. at ¶¶ 24, 92; Pl.'s Stmt. of Mat. Facts ("Pl.'s Stmt.") ¶¶ 20, 25-26.)  In November 2000, Graham filed an EEO complaint about a 1999 investigation by the Intelligence Oversight Board ("IOB").  (Pl.'s Stmt. ¶ 29.)  In March 2002, the defendants notified Graham that he would be suspended for three days without pay as a result of the IOB investigation findings. (Am. Compl. ¶ 66; Defs.' Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") at 2-3.)  Graham later filed a second EEO complaint alleging discrimination based on race, age, and retaliation, and he appealed his proposed punishment.  (Am. Compl. ¶¶ 12, 67; Pl.'s Stmt. ¶ 30.)  In addition, Graham complained to the Justice Department's Office of the Inspector General about what he viewed as mismanagement and abuse of authority reflected in his workload assignment, the conduct of the IOB investigation, and reported unauthorized use of electronic surveillance relating to a public corruption

-3-

investigation.  (Am. Compl. ¶ 72; Pl.'s Stmt. ¶ 31.)  Graham's proposed three-day suspension was eventually reduced to a letter of censure.  (Am. Compl. ¶ 69.)

In June 2002, Graham filed a civil action in this court regarding the agency's handling of the IOB investigation and decision to censure him.  See Graham v. Gonzales, Civil Action No. 03-1951 (RWR), 2005 WL 3276180, at *4 (D.D.C. September 30, 2005).  In August 2002, Graham asked to take a "reasonable" amount of administrative leave to address matters related to his 2002 EEO complaint.  (Am. Compl. ¶ 71; Defs.' Stmt. of Mat. Facts ("Def.'s Stmt.") ¶ 8.)  Graham's supervisor sought guidance from the Assistant Special Agent in Charge ("ASAC") about whether to approve the request and sign Graham's time and attendance register, because Graham's supervisor believed that his oversight could be a conflict of interest.  (Defs.' Stmt. ¶ 9; Defs.' Mem. Ex. 1 ("Fogle Decl.") ¶¶ 5-6.)  The ASAC contacted the Office of EEO Affairs to ask how to proceed with Graham's request to take administrative leave.  The Office of EEO Affairs informed the ASAC that it did not authorize requests for administrative leave, and that Graham's request should be forwarded to the Employment Law Unit.  (Defs.' Stmt. ¶ 12; Defs.' Mem. Ex. 3 ("Trent Decl.") ¶¶ 4-7.)  Approximately three weeks after Graham made his request for administrative leave, his request was approved by a different ASAC.  (See Defs.' Mem. Ex. 4 ("Bolcar Decl.") ¶¶ 4-6.)  Graham

alleges that his request was never acted upon, and that his request subjected him to "unwarranted administrative scrutiny." (Am. Compl. ¶ 71.)

In November 2002, Graham filed another EEO complaint, alleging mental harassment and retaliatory hostile working environment.  (Pl.'s Stmt. ¶ 33.)  Shortly thereafter, Graham's 2002 civil action was dismissed with prejudice, because the claims he raised were not viable.  See Graham v. Ashcroft, Civil Action No. 02-1231 (ESH), 2002 WL 32511002, at *5-6 (D.D.C. November 20, 2002).

In January 2003, the defendants transferred Graham to another squad and assigned to him a bureau vehicle that Graham claims had "an inoperable door locking mechanism, an inoperable heating and air conditioning system, a dead battery, very high mileage and delinquent parking tickets."  (Am. Compl. ¶ 71; Pl.'s Stmt. ¶ 96.)  According to Graham, in February 2003, the defendants advised him that he could not use previously unclassified letters in appealing the dismissal of his 2002 federal action, and threatened to prosecute him if he disclosed any classified information.  (Am. Compl. ¶ 71; Pl.'s Stmt. ¶ 98.) In response, Graham asked the Justice Department's Office of Professional Responsibility ("OPR") to investigate whether the threats were made to impede an official proceeding.  (Am. Compl. ¶ 74.)  In July 2003, Graham met with OPR staff to review his

-5-

allegations and other complaints - - a meeting which, according
to him, "quickly turned into a hostile interrogation and threats
of administrative action [that could be] taken against the
plaintiff." (Id. ¶ 76.)  In September 2003, Graham retired from
the FBI and filed this action in which he alleges that he was
subjected to a retaliatory hostile work environment when the
defendants failed to authorize his request for reasonable
administrative leave to address matters related to his EEO
complaint, subjected him to strict scrutiny in response to his
request for administrative leave, transferred him to another
squad and assigned him a mechanically deficient vehicle, advised
him that he could not use certain classified information in his
pending litigation, and threatened him with criminal prosecution
for any unauthorized disclosure of classified information.  (Id.
¶¶ 27, 71; Defs.' Stmt. ¶ 2.)[1]

The defendants now move for summary judgment under Federal
Rule of Civil Procedure 56, arguing that the five bases for
Graham's assertion of a retaliatory hostile work environment
could not as a matter of law constitute a hostile work
environment:

> (a) [Graham] was not afforded "reasonable leave" to
> work on his EEO complaint; (b) his request for leave
> was subjected to scrutiny; (c) his reputation was
> tarnished when he was given a mechanically deficient

[1] Graham also alleged six other claims which were dismissed
earlier.  See Graham v. Gonzalez, 2005 WL 3276180, at *7.

-6-

FBI car; (d) he was told by FBI counsel that he could not publish a document that contained classified information . . . ; and (e) he was threatened that he could be prosecuted if he published the classified document.

(Defs.' Mem. at 7; see Am. Compl. ¶ 71.)  See also Graham v. Mukasey, 608 F. Supp. 2d 50, 51 (D.D.C. 2009).  Graham filed a cross-motion for summary judgment, but did not file an opposition to the defendants' motion for summary judgment.

## DISCUSSION

"Summary judgment may be granted only where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009) (citing Fed. R. Civ. P. 56 (c) and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A genuine issue of fact exists where the evidence is "such that a reasonable jury could return a verdict for the nonmoving party," after "resolving ambiguities and drawing all factual inferences in favor of the nonmoving party." Moore, 571 F.3d at 66 (quoting Anderson, 477 U.S. at 255).  "The nonmoving party cannot defeat summary judgment by 'simply show[ing] that there is some metaphysical doubt as to the material facts.'" Moore, 571 F.3d at 66 (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "Not all alleged factual disputes represent genuine issues of material fact which may only be resolved by a jury.  Material facts are those that might affect

the outcome of the suit under governing law[.]" Nails v. England, 311 F. Supp. 2d 116, 121 (D.D.C. 2004) (internal quotations omitted).

"In deciding whether there is a genuine issue of material fact, the court must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record." Hussain v. Nicholson, 435 F.3d 359, 365 (D.C. Cir. 2006) (quoting Dist. Intown Prop. L.P. v. Dist. of Columbia, 198 F.3d 874, 878 (D.C. Cir. 1999)). To successfully oppose a motion for summary judgment under Rule 56(c), a non-moving party must present sufficient admissible evidence for a reasonable trier of fact to find for the nonmoving party. Juergens v. Urban Title Servs., 533 F. Supp. 2d 64, 73 (D.D.C. 2008) (citing Laningham v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987)). Briefs containing mere allegations or merely denying the movant's pleading are not enough to prevent summary judgment; instead, a non-movant must go beyond the pleadings to proffer specific facts rebutting the movant's assertions. See Greer v. Paulson, 505 F.3d 1306, 1315 (D.C. Cir. 2007); Burke v. Gould, 286 F.3d 513, 517-18 (D.C. Cir. 2002). "Although the burden on the nonmoving party is not great, it is still required to show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial."

Palestine Info. Office v. Shultz, 853 F.2d 932, 944 (D.C. Cir. 1988).

To establish a successful claim of retaliation, a plaintiff must initially show "that (1) he engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged action materially adverse, and (3) there existed a causal connection between the protected activity and the materially adverse action." Baloch v. Norton, 517 F. Supp. 2d 345, 353-54 (D.D.C. 2007) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 58 (2006)). "Statutorily protected activities include the filing of EEOC complaints and the initiation of litigation to vindicate claims of employment discrimination or retaliation." Baloch, 517 F. Supp. 2d at 354 (citing Forkkio v. Powell, 306 F.3d 1127, 1131-32 (D.C. Cir. 2002)).

In this circuit, a hostile work environment can amount to retaliation under Title VII. Hussain, 435 F.3d at 366. To prevail on a claim that a hostile work environment amounts to retaliation under Title VII, a plaintiff must show that he was subjected to "'discriminatory intimidation, ridicule and insult' of such 'sever[ity] or pervasive[ness] [as] to alter the conditions of . . . employment and create an abusive working environment.'" Id. at 366; Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993) (citing Meritor Sav. Bank, FSB v. Vinson,

477 U.S. 57, 64 (1986)).  To determine whether a hostile work
environment exists, the court looks to the totality of the
circumstances, including the frequency of the discriminatory
conduct, its severity, its offensiveness, and whether it
interferes with an employee's work performance.  Faragher v.
City of Boca Raton, 524 U.S. 775, 787-88 (1998).  Ultimately,
"[s]o long as the environment would reasonably be perceived, and
is perceived, as hostile or abusive," it is actionable.  Harris,
510 U.S. at 22.  A hostile work environment claim is not a cause
of action for the "ordinary tribulations of the workplace."
Franklin v. Potter, 600 F. Supp. 2d 38, 76-78 (quoting Faragher,
524 U.S. at 788).  Not all things that make an employee unhappy
create a hostile work environment.  Broderick, 437 F.3d at 1233.
"A mere delay [in granting an employee's leave request] does not
constitute an adverse personnel action."  Cromwell w. Wash.
Metro. Area Transit Auth., No. 97-2257 (RMC), 2006 WL 2568009,
at * 6 (D.D.C. Sept. 5, 2006) (concluding that the plaintiff's
claim that her employer delayed/denied her leave request did not
support a reasonable inference of discrimination) (citing Taylor
v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (concluding that
a delay in receiving employee performance evaluations did not
constitute an adverse action because it did not affect
plaintiff's grade or salary)).  Even objectionable behavior that
is "motivated by discriminatory animus" might not be actionable.

-10-

Barbour v. Browner, 181 F.3d 1342, 1347-48 (D.C. Cir. 1999).
The conduct complained of "must be extreme to amount to a change
in the terms and conditions of employment." Franklin, 600 F.
Supp. 2d at 77 (quoting Faragher, 524 U.S. at 788).

In addition, to sustain a hostile work environment claim
based on retaliation, the plaintiff must produce evidence that
establishes a causal connection between the harassment and his
protected activity. See Na'im v. Clinton, Civil Action No. 06-
2237 (RMU), 2009 WL 174364, at * 11 (D.D.C. June 19, 2009);
Nichols v. Truscott, 424 F. Supp. 2d 124, 141 (D.D.C. 2006).
The causal connection may be established by showing that the
employer had knowledge of the employee's protected activity, and
that the events that created a hostile environment action took
place shortly after that activity. Holmes-Martin v. Leavitt,
569 F. Supp. 2d 184, 203 (D.D.C. 2008); see also Cones v.
Shalala, 199 F.3d 512, 521 (D.C. Cir. 2000) (citing Mitchell v.
Baldrige, 759 F.2d 80, 86 (D.C. Cir. 1985). In order to qualify
as related, the temporal proximity of the harassment and
protected activity must be substantially close. See Willingham
v. Gonzales, 391 F. Supp. 2d 52, 61-62 (D.D.C. 2005) (concluding
that a six-month lapse between the retaliatory action and the
protected activity is insufficient to support a finding of
causation on the basis of temporal proximity); Buggs v. Powell,
293 F. Supp. 2d 135, 148 (D.D.C. 2003) (holding that the time

lapse must be less than three months to establish a causal
connection).

Graham alleges that the defendants prohibited him from
using reasonable administrative leave to address matters related
to his EEO complaint and used his leave request to scrutinize
his records.  (Am. Compl. ¶ 93.)  However, the defendants
provided declarations from Graham's immediate supervisor and the
ASAC demonstrating no actionable misconduct in the defendants'
reaction to Graham's request to take reasonable administrative
leave.  (See Defs.' Stmt. ¶¶ 7-13; Fogle Decl. ¶ 3; Trent Decl.
¶ 6.)  While the defendants acknowledge that Graham's time
request was not immediately authorized, Graham does not offer
any evidence to permit a reasonable inference that the
defendants' brief inaction regarding his request constituted the
type of incident that can contribute to a hostile work
environment.  Graham sent his request for administrative leave
to his immediate supervisor, who was also the subject of
Graham's EEO complaint which he was requesting leave to address.
The supervisor involved the ASAC to avoid a possible conflict of
interest, hardly an improper choice.  Although the complaint
alleged that his leave request was never authorized, another
ASAC eventually did approve Graham's request.  (See Bolcar Decl.
¶¶ 4-6.)  Further, Graham requested that another agent handle
his leave request before the initial ASAC made her final

determination of how much leave time was reasonable, meaning
that some period of delay was partially occasioned by Graham.
(See Defs.' Stmt. ¶ 8-13.)

     Graham's evidence is insufficient to raise a reasonable
inference that the defendants' delay in granting his time
request was pretext for retaliation or discrimination.  The
defendants' delay in responding to Graham's leave request does
not constitute action sufficiently severe or pervasive to alter
the conditions of his employment and create an abusive working
environment.  Furthermore, Graham has failed to rebut the
defendants' non-discriminatory reason for their actions in
response to his leave request.  As such, Graham's claim that the
defendants retaliated against him by causing a hostile work
environment in response to his leave request fails.  Nor does
Graham's assertion that his time and attendance slips were more
thoroughly investigated make out a retaliatory hostile work
environment claim.  Generally, an assertion that an employer
excessively reviewed an employee's performance "'does not
satisfy the requirement that plaintiff show a pervasive, severe
and discriminatory hostile work environment.'"  Asghar v.
Paulson, 580 F. Supp. 2d 30, 39 (D.D.C. 2008) (quoting
Childs-Pierce v. Util. Workers Union of Am., 383 F. Supp. 2d 60,
79 (D.D.C. 2005)).  Being subjected to "scrupulous monitoring"
does not support a claim for hostile work environment because

"it is part of the employer's job to ensure that employees are safely and properly carrying out their jobs." Runkle v. Gonzales, 391 F. Supp. 2d 210, 226 (D.D.C. 2005) (quoting Hussain v. Prinicipi, 344 F. Supp. 2d 86, 104-05 (D.D.C. 2004).

     Similarly, the defendants produced evidence establishing a legitimate, nondiscriminatory reason for assigning Graham the vehicle about which he complained.  A declaration from Graham's immediate supervisor stated that Graham was given a different vehicle once he got scheduled to transfer to a different squad because the supervisor needed to maintain the low mileage vehicles for agents who remained on the squad and were continuing to "work the target."  (Defs.' Stmt. ¶¶ 14-17; Defs.' Mem. Ex. 2 ("Georgacopoulos Decl.") ¶ 2.)  Georgacopoulos also explained that the outstanding parking tickets that were issued to the vehicle were incurred when the vehicle was assigned to another agent who had left the squad, and the defendants decided to pay the citations to prevent Graham's possible loss of the use of the vehicle during the time needed to investigate the tickets.  (Georgacopoulos Decl. ¶¶ 4-5.)  The defendants also provided a work order to show that a new battery and a new thermostat were placed in Graham's assigned vehicle one week after Graham reported the problems.  (Defs. Stmt. ¶ 15; Defs.' Mem. Ex. 5.)  In addition, the defendants provided work orders to show that on three other occasions when Graham complained of

-14-

problems with the vehicle, they were repaired on the same day.
(Defs.' Mem. Ex. 5, at 2-4.)

Graham has failed to produce any contradictory evidence.
Instead, he merely asserts that "more suitable vehicles were
available," citing nothing more than his complaint as evidence
for that assertion.  (Pl.'s Stmt. ¶ 96.)  Because Graham has
failed to offer any contradictory evidence to rebut the
defendants' neutral reason for Graham's vehicle assignment, this
basis will not support Graham's claim of retaliatory hostile
work environment.

Finally, Graham alleges that the defendants threatened him
with criminal prosecution in the event of any unauthorized
disclosure or if he used classified documents in his pending
litigation.  (Am. Compl. ¶ 93.)  In support of their summary
judgment motion, the defendants produced a declaration from an
FBI Supervisory Special Agent establishing that Graham was
merely advised that he could not disclose classified information
in his pending litigation and was required to use redacted
versions of classified documents, which the defendants provided
for him.  (Defs.' Stmt. ¶ 21-22; Defs.' Mem. Ex. 7 ¶¶ 5-7.)
Even crediting Graham's allegation that he felt threatened by
the defendants' words of caution, Graham provides no evidence
from which a reasonable jury could conclude that the defendants'
warning him about the results of publishing classified

-15-

information created a hostile working environment.  <u>See</u> <u>Rattigan</u> <u>v. Gonzales</u>, 503 F. Supp. 2d 56, 63, 79 (D.D.C. 2007) (concluding that a supervisor's threat - - "If I catch you doing something . . . I promise you I'll cut your balls off" - - was not enough to satisfy a hostile working environment standard). Further, a defendant's refutation of the assertion that individual incidents constituted retaliation can, "even if only implicitly, refute the umbrella charge that the acts collectively constitute" retaliatory hostile work environment. <u>See</u> <u>Baloch</u>, 517 F. Supp. 2d at 362 (citing <u>Walker v. Johnson</u>, 501 F. Supp. 2d 156, 162 (D.D.C. 2007)).

Further, even if Graham has shown that his working conditions were not ideal, Graham has failed to indicate how these incidents constituted a pervasive pattern of abuse.  They were infrequent and discrete, and for the most part, barely severe or intimidating.  Moreover, Graham has not shown that the incidents he has cited constitute the extreme conduct that is usually required to form the basis of a hostile work environment claim, or that the incidents unreasonably interfered with the conditions of his employment.  <u>See</u> <u>Faragher</u>, 524 U.S. at 787-88); <u>Holbrook v. Reno</u>, 196 F.3d 255, 262-63 (affirming summary judgment because the employee failed to offer a fact-specific showing of how alleged hostile act altered the conditions of her work); <u>Hussain</u>, 435 F.3d at 366-67 (holding that although the

-16-

plaintiff's work environment "was hardly ideal," no reasonable
jury could conclude that the actions complained of, which
included denying him promotion, denying him medical leave,
rendering poor performance evaluations and stating threats of
termination, constituted an abusive working environment).

## CONCLUSION

Because plaintiff has failed to establish any genuine
issues of material fact regarding his retaliatory hostile work
environment claim and has failed to rebut defendants' neutral
reasons for their actions, the defendants' motion summary
judgment will be granted and plaintiff's cross-motion for
summary judgment will be denied as moot.  A final, appealable
order accompanies this Memorandum Opinion.

SIGNED this 29th day of September, 2009.


                        _____/s/_____
                        RICHARD W. ROBERTS
                        United States District Judge